IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–01051–ZLW–KMT

JOHN NASIOUS,

     Plaintiff,

v.

STATE OF COLORADO - OFFICE OF THE GOVERNOR BILL RITTER;
NURSE MARTHA MUELLER, Physician Health Partners,
DR. BARRY GOLDSMITH, Physician Health Partners,
PAULA FRANTZ M.D. CMO, Colorado Dept. of Corrections,
STEPHEN KREIBS M.D. - Physician, Health Partners Agent of Record,
P.A. BRIAN WEBSTER, Physician Health Partners (Ft Myers, FL),
PA TEJEENDER SINGH, Physician Health Partners,
ARISTEDES ZAVARAS, Executive Director CDOC,
JOSEPH GARY FORTUNADO D.O., Physician Health Partners,
P.A. JOANN STOCK, Physician Health Partners,
NURSE NANCY WHITE, Physician Health Partners,
JOSEPH WERMERS, M.D., Physician Health Partners,
CO ST. MARTIN, Colorado Dept. of Corrections,
CO REGINA JOHNSON, Medical Department Colorado Dept. of Corrections,
CAPTAIN WEINGARDT, Colorado Dept. of Corrections,
LT MARK BOLD, Colorado Dept. of Corrections,
LT JASON ZWIRN, Colorado Dept. of Corrections,,
CATHIE HOLST, Manager of Correctional Legal Services,
ADA Coordinator, AIC CDOC,
ADRIENNE JACOBSON, Legal Assistant AIC/ADA Coordinator CDOC,
WARDEN BARK BROADDUS, Colorado Dept. of Corrections,
MAJOR TWO BEARS CHAVES, Colorado Dept. of Corrections,
SGT BECKY BALL, Colorado Dept. of Corrections,
LT. JIMERSON, Colorado Dept. of Corrections,
MS. HAVERLY LIBRAIAN, Colorado Dept. of Corrections,
JOHN DOE AND JANE DOE, all in their individual and official capacities,

     Defendants.

**RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on "Defendant State of Colorado – Office of the Governor Bill Ritter's Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 58, filed Jan. 27, 2010 [hereinafter "Mot."]) and "Defendant State of Colorado – Office of the Governor Bill Ritter's Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 62, filed Jan. 28, 2010, [hereinafter "Memo."]). Plaintiff filed his Response on April 8, 2010. (Doc. No. 93 [hereinafter "Resp."].) Defendant State of Colorado – Office of the Governor Bill Ritter (hereinafter "Defendant Ritter")[1] filed a Reply on April 21, 2010. (Doc. No. 96.) The Motion is ripe for the court's ruling and recommendation.

## I. STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation.

---

[1] At the outset, although Plaintiff conjunctively names the State of Colorado and Bill Ritter as a single defendant, the court finds that Plaintiff's Prisoner Complaint (Doc. No. 17, filed Oct. 23, 2009 [hereinafter Compl."]) alleges claims against Bill Ritter—in his individual and official capacities—alone. In support of this construction, the court notes that Plaintiff supports naming the "State of Colorado – Office of the Governor Bill Ritter" as a defendant by stating that "Bill Ritter is the Governor of the State of Colorado at all times relevant to this complaint responsible for Department of Corrections and compliance of ADA in all facilities." (Compl. at 3.) Accordingly, despite the convoluted manner in which Plaintiff has named Defendant Ritter as a defendant, the court will not engage in sheer formalism, and instead finds that Plaintiff's claims properly lie against Bill Ritter alone, and not the State of Colorado.

Plaintiff is an inmate with the Colorado Department of Corrections ("CDOC") at Sterling Correctional Facility.  (Memo. at 2.)  In his Complaint, Plaintiff generally alleges that Defendants provided him inadequate medical treatment, or denied him treatment altogether, for his migraine headaches, epilepsy, and degenerative disc disease.  (Compl. at 19–23.)  Next, Plaintiff alleges that he was removed from the general inmate population and the prison's "Therapeutic Community" program, refused medical treatment, fired from his prison job, and had his property confiscated because he tried to seek medical attention and complained about the adequacy of the treatment he was receiving.  (*Id.* at 24–31.)  Plaintiff also alleges that Defendants failed to recognize his migraine headaches, epilepsy, and spinal stenosis as disabilities and failed accommodate these disabilities in his prison employment and the conditions of his confinement. (*Id.* at 32–40.)  Finally, Plaintiff alleges that on November 7, 2008, while "being transfered [sic] back from medical," he was "subjected to a mass strip search which included a completely naked body cavity search in the presence of multiple other inmates and female staff."  (*Id.* at 42.)

Based on these facts, Plaintiff alleges (1) claims pursuant to 42 U.S.C. § 1983 that Defendants were deliberately indifferent to his medical needs and, therefore, violated his rights under the Eighth Amendment to be free from cruel and unusual punishment; (2) claims pursuant to 42 U.S.C. § 1985 that Defendants retaliated against him for exercising his rights to medical treatment and to petition the government for grievances; (3) claims pursuant to the Americans with Disabilities Act ("ADA") that Defendants discriminated against him based on his epilepsy, migraines, and spinal stenosis by failing to recognize these impairments as disabilities and

failing to accommodate these disabilities in his employment and the conditions of his

confinement, and (4) claims pursuant to 42 U.S.C. § 1983 that his Fourth Amendment rights to

be free from unreasonable searches and seizures were violated.  (*See id.*)  Plaintiff has sued all

Defendants in their individual and official capacities.  (*Id.* at 1.)  Plaintiff seeks injunctive relief,

compensatory damages, punitive damages, and legal fees and costs.  (*Id.* at 45.)

      Plaintiff's claims against Defendant Ritter, however, are far more limited.  Plaintiff only

alleges that Defendant Ritter violated his Eighth Amendment rights and his rights under the

ADA; he does not allege that Defendant Ritter retaliated against him or violated his Fourth

Amendment rights in any manner.  As to Plaintiff's § 1983 claims, Plaintiff alleges that

Defendant Ritter violated his Eighth Amendment rights by "allowing a consistant [sic] pattern of

denial of medical attention," which "constitutes a failure to supervise."  (*Id.* at 22.)  In support of

this position, Plaintiff alleges that he wrote "multiple letters and [his] family has made multiple

calls to the Governors [sic] office meaning that the State of Colorado, through the Governor Bill

Ritter[,] knew or should have known" that he was denied adequate medical attention.  (*Id.*)

Plaintiff also alleges that Defendant Ritter violated Plaintiff's rights under the ADA by

"refus[ing] to have [the] CDOC recognize migraine disease, epilepsy, [and] chronic back pain

(spinal stenosis) as disabilities despite their being labeled as such by the ADA."  (*Id.* at 35.)

Plaintiff has sued Defendant Ritter in both his official and individual capacities.  (*Id.* at 1.)

      In his Motion and Memorandum, Defendant Ritter moves to dismiss Plaintiff's claims

against him on a number of grounds.  (*See* Memo.)  Plaintiff's Response only briefly contests

Defendant Ritter's arguments for dismissal and thereafter proceeds to outline a litany of additional allegations against the remaining Defendants.  (*See* Resp.)

## II.    *LEGAL STANDARDS*

### A.    **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se.*  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**B.     *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id.* at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 1951.  If the allegations state a plausible claim for relief, that claim survives the motion to dismiss.  *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## III. ANALYSIS

At the outset, the court notes that, despite the fact that Plaintiff names Defendant Ritter in both his individual and official capacities (Compl. at 1), Defendant Ritter has failed to distinguish between Plaintiff's official capacity and individual capacity claims against Defendant Ritter in arguing for dismissal. As will be outlined below, the court finds that Defendant Ritter's Motion and Memorandum relates to only to dismissing Plaintiff's claims against Defendant Ritter in his individual capacity. Nonetheless, the court first addresses Plaintiff's claims against Defendant Ritter in his official capacity.

### A.    Official Capacity Claims

#### 1.    Eleventh Amendment Immunity

Defendant Ritter has not raised the defense of Eleventh Amendment immunity to Plaintiff's claims against Defendant Ritter in his official capacity.   However, "a court may raise the issue of Eleventh-Amendment immunity *sua sponte* but, unlike subject-matter jurisdiction, it is not obligated to do so."  *United States ex rel. Burlbaw v. Orenduff,* 548 F.3d 931, 952 (10th Cir. 2008) (citing *Wisc. Dep't of Corr. v. Schacht,* 524 U.S. 381, 389 (1998); *Nelson v. Geringer*, 295 F.3d 1082, 1098 n.16 (10th Cir. 2002)).  For the reasons outline below, the court (1) elects to *sua sponte* raise the issue of Eleventh Amendment immunity as to Plaintiff's Eighth Amendment claims against Defendant Ritter in his official capacity, but (2) declines to raise Eleventh Amendment immunity *sua sponte* as to Plaintiff's ADA claims against Defendant Ritter in his official capacity.

##### a.    Eight Amendment Claims

To the extent that Plaintiff is suing Defendant Ritter in his official capacity, he is in reality attempting to impose liability on the State of Colorado.  *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988).  A suit against a state official in his or her official capacity is treated as a suit against the state.  *Hafer v. Melo*, 502 U.S. 21 (1991).  Absent an unmistakable waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663, (1974)).  The State of Colorado has not waived its Eleventh Amendment immunity.  *See Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988).

Furthermore, congressional enactment of 42 U.S.C. § 1983 did not abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 340-345 (1979). Thus, to the extent that Plaintiff sues Defendant Ritter in his officially capacity for damages pursuant to § 1983, Plaintiff is essentially suing the State of Colorado for damages, and therefore Defendant Ritter is entitled to Eleventh Amendment immunity.

However, Plaintiff also seeks injunctive relief against Defendant Ritter. As an example, Plaintiff seeks "immediate examination by an outside the facility physician, medical expert or surgeon who will examine . . . plaintiffs [sic] claims of pain and suffering." (Compl. at 45.) Actions in federal court seeking injunctive relief against state officials are not always barred by the Eleventh Amendment. *See Ex parte Young,* 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment generally does not bar official capacity claims seeking prospective injunctive relief from a state official). *See also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'") (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985)).

Nonetheless, "[p]rospective equitable relief is available, notwithstanding the Eleventh Amendment, only when the state officer being sued bears some connection to the enforcement of the allegedly defective act." *Easterwood v. Okla. Dep't of Corr.,* No. CIV–06–1023–C, 2007 WL 853736, at *4 (W.D. Okla. Mar. 16, 2007) (internal quotations and citations omitted). *See also Ex parte Young*, 209 U.S. at 157 ("[i]n making an officer of the state a party defendant in a

9

suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer

must have some connection with the enforcement of the act, or else it is merely making him a

party as a representative of the state, and thereby attempting to make the state a party").

Here the court finds that Defendant Ritter simply had no appreciable connection with the

alleged deprivation of, or inadequate provision of, medical treatment underlying Plaintiff's

Eighth Amendment claims. Plaintiff's only allegations attempting to involve Defendant Ritter in

the violations of Plaintiff's Eighth Amendment rights are that Plaintiff wrote letters, and his

family made phone calls, that purportedly informed Defendant Ritter's office that Plaintiff was

being denied adequate medical treatment. However, Plaintiff fails to allege any factual details

underlying these communications. Moreover, the court finds that merely routing correspondence

to Defendant Ritter's office does not give rise to a sufficient connection between Defendant

Ritter and the actions underlying Plaintiff's Eighth Amendment claims to permit suit against

Defendant Ritter in his official capacity. *See also Women's Emergency Network v. Bush,* 323

F.3d 937, 949 (11th Cir. 2003) (finding that a Governor's authority over a lower state agency

was "simply too attenuated to establish" the "some connection" requirement of *Ex Parte Young*).

Instead, the court finds that by naming Defendant Ritter as a defendant in his official capacity,

Plaintiff is attempted to do exactly what *Ex Parte Young* rejects, that is, "making him a party as a

representative of the state, and thereby attempting to make the state a party." 209 U.S. at 157.

Finally, the court is further persuaded that Plaintiff's § 1983 claims should be dismissed

as to Defendant Ritter in his official capacity because a number of other named defendants are

employees of the CDOC, including the Executive Director of the CDOC, Defendant Zavaras.

Thus, these Defendants are far more proximate to the conduct underlying Plaintiff's Eighth

Amendment claims than Defendant Ritter. Therefore, even if the court dismisses Plaintiff's

§ 1983 claims against Defendant Ritter in his official capacity, Plaintiff may still be able to

obtain injunctive relief if liability is established. *See Finstuen v. Crutcher,* 496 F.3d 1139, 1151

(10th Cir. 2007) (finding a state official named in his official capacity was a proper defendant

because he was "most directly responsible" for the conduct underlying the plaintiff's claims).[2]

Accordingly, the court finds that to the extent Plaintiff's Eighth Amendment claims name

Defendant Ritter in his official capacity, Defendant Ritter is entitled to Eleventh Amendment

immunity. Therefore, Plaintiff's § 1983 claims against Defendant Ritter are properly dismissed.

### b.    ADA Claims

Plaintiff also names Defendant Ritter in his official capacity with respect to his claims

under the ADA. As outlined above, naming Defendant Ritter in his official capacity is

essentially a claim against the State of Colorado. *See Meade v. Grubbs*, 841 F.2d at 1529.

However, in the ADA, Congress clearly expressed its intent to abrogate the States' Eleventh

Amendment immunity. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh

amendment to the Constitution of the United States from an action in Federal or State court of

competent jurisdiction for a violation of this chapter"). The Supreme Court has held that

Congress validly abrogated the States' sovereign immunity only for certain kinds of ADA

---

[2] Of course, because no other defendants have joined in the present Motion, the court does not decide whether Plaintiff has validly sued any of these CDOC defendants in their official capacities.

claims. *United States v. Georgia,* 546 U.S. 151 (2006). In *United States v. Georgia,* the Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159 (emphasis in original). Thus, the Court held that lower courts should determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to the that class of conduct is nevertheless valid." *Id.*

In light of the above, the court finds it wise to decline its discretion to raise Eleventh Amendment immunity *sua sponte* with respect to Plaintiff's ADA claims against Defendant Ritter in his official capacity. *See Hughes v. Colo. Dep't Corr.,* 594 F. Supp. 2d 1226, 1234 n.1 (D. Colo. 2009). Instead, the court finds that the inquiry mandated by *United States v. Georgia* must be developed in further briefing by the parties on an appropriate motion. *Id.* Indeed, the Tenth Circuit has indicated that this abrogation inquiry is likely not appropriate at the pleadings stage, but instead should be resolved only after a factual record is developed. *Guttman v. New Mexico,* 325 F. App'x 687, 692 (10th Cir. 2009); *see also United States v. Georgia,* 546 U.S. at 160 (Stevens, J., concurring) (noting that allowing a district court to apply the three-part test "wisely permits the parties . . . to create a factual record that will inform [the Eleventh Amendment question]"). Finally, the fact that Plaintiff does allege Eighth Amendment constitutional violations that appear at least arguably linked to his ADA claims further cuts

against addressing this issue here. *Maske v. City and County of Denver,* No. 09–cv–00582–BNB, 2009 WL 1396138, at *1 (D. Colo. May 15, 2009) (dismissing the plaintiff's complaint because nothing in his complaint indicated conduct by a public entity that also violated the Fourteenth Amendment).

Accordingly, the court finds that, at least at this juncture, Defendant Ritter is not entitled to Eleventh Amendment immunity from Plaintiff's ADA claims. Accordingly, the court finds that Defendant's Motion is properly denied as to Plaintiff's ADA claim against Defendant Ritter in his official capacity.

### B.        *Individual Capacity Claims*

In his Motion and Memorandum, Defendant Ritter moves to dismiss Plaintiff's Complaint on grounds that (1) Plaintiff's Complaint fails to sufficiently allege that Defendant Ritter violated Plaintiff's rights under the Eighth Amendment or the ADA, (2) Defendant Ritter is entitled to qualified immunity, and (3) Plaintiff has not alleged that Defendant Ritter personally participated in any violations of Plaintiff's constitutional rights. Again, the court finds that even though Defendant Ritter does not tailor them as such, these arguments address Plaintiff's claims against Defendant Ritter in his individual capacity.

### 1.        *Eighth Amendment Claim*

### a.        *Personal Participation*

Defendant Ritter argues that Plaintiff has failed to establish that Defendant Ritter personally participated in any alleged violation of Plaintiff's constitutional rights. More specifically, Defendant Ritter maintains that Plaintiff's allegations essentially amount to an

13

argument for supervisor liability and argues that "[s]uperiors cannot be held vicariously liable for conduct" without an affirmative link between the violation and the supervisor's own actions. (Memo. at 9–10.)

Personal participation is an essential allegation in a § 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Morever, it is well established that a defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948.

The court finds that Plaintiff's allegations that Defendant Ritter allowed "a consistent pattern of denial of medical attention" amounting to a "failure to supervise" essentially allege that Defendant Ritter should be held vicariously liable for the deprivation of Plaintiff's constitutional rights. This, of course, is insufficient to establish Defendant Ritter's personal participation in violating Plaintiff's constitutional rights. Indeed, Plaintiff's only argument that Defendant Ritter "knew or should have known" that Plaintiff's constitutional rights were being violated is that Plaintiff alleged wrote "multiple letters" and his family "made multiple calls" to

14

Defendant Ritter's office.  (Compl. at 22.)  However, Plaintiff does not allege underlying factual details about these alleged phone calls and letters.  Moreover, simply routing correspondence to a defendant is insufficient to support a claim of personal participation.  *Davis v. Arkansas Valley Corr. Facility,* 99 F. App'x 838, 843 (10th Cir. 2004) (copying the defendant with correspondence outlining the plaintiff's complaints about medical care, without more, did not sufficiently implicate that defendant under § 1983).  Accordingly, the court finds that Plaintiff fails to sufficiently allege that Defendant Ritter personally participated in the alleged violations of Plaintiff's constitutional rights.

### b.     *Failure to State a Claim for an Eighth Amendment Violation*

Defendant Ritter also argues that Plaintiff fails to state a claim for a violation of the Eighth Amendment.  More specifically, Defendant Ritter maintains that Plaintiff fails to demonstrate that Defendant Ritter was "deliberately indifferent" to Plaintiff's medical needs because Plaintiff does not allege that Defendant Ritter subjectively perceived a serious risk of harm to Plaintiff and thereafter deliberately ignored that risk.  (Memo. at 3–4.)

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  As a result, deliberate indifference to a prisoner's serious medical condition is actionable under 42 U.S.C. § 1983.  *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  However, to establish a claim for deliberate indifference, the plaintiff must prove that, subjectively, the official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Id.* Mere negligence or even gross negligence will not give rise to an Eighth Amendment claim. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1495–96 (10th Cir.1990).

Here, Plaintiff's only allegations that Defendant Ritter may have subjectively perceived an excessive risk of serious harm to Plaintiff are that he wrote letters, and his family made phone calls, to Defendant Ritter's office claiming he was denied adequate medical care. (Compl. at 22.) However, Plaintiff makes no factual allegations as to the underlying details of those phone calls and letters. As such, without more, the court finds that Plaintiff has failed to allege that Defendant Ritter subjectively knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk. Instead, at their very best, Plaintiff's allegations rise to an inference that Defendant Ritter was negligent in failing to take notice of Plaintiff's complaints that his constitutional rights were being violated. Accordingly, the court finds that Plaintiff fails to sufficiently allege that Defendant Ritter violated his Eighth Amendment rights.

### c.  *Qualified Immunity*

Finally, Defendant Ritter argues that, to the extent that Plaintiff is suing Defendant Ritter in his individual capacity under § 1983, Defendant Ritter is entitled to the defense of qualified immunity. Whether Defendant Ritter is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. With regard to this second [prong], the

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.* Having concluded above that Plaintiff has failed to state a claim that Defendant Ritter's conduct violated any constitutional right, Defendant Ritter is entitled to qualified immunity on Plaintiff's § 1983 claim.

To summarize, the court finds that Plaintiff's Eighth Amendment claim against Defendant Ritter in his individual capacity fails because Plaintiff has not alleged that Defendant Ritter personally participated in any violation of Plaintiff's constitutional rights, and because Plaintiff has failed to sufficiently allege that Defendant Ritter was deliberately indifferent to a risk of serious harm to Plaintiff. Consequently, because Plaintiff fails to state an Eighth Amendment claim against Defendant Ritter, the court also finds that Defendant Ritter is entitled to qualified immunity. Accordingly, the court finds that Plaintiff's § 1983 claim against Defendant Ritter in his individual capacity is properly dismissed.

### 2. *ADA Claims*

Plaintiff's second claim against Defendant Ritter alleges that Defendant Ritter individually violated Plaintiff's rights under the ADA by refusing to recognize several of Plaintiff's impairments as disabilities. (Compl. at 35.) Defendant Ritter argues that Plaintiff

fails to state a claim under the ADA because (1) Plaintiff does not have a protected property or liberty interest in his employment in any particular job, (2) Plaintiff fails to allege that his impairments amount to a disability within the meaning of the ADA, and finally, (3) Plaintiff fails to sufficiently allege that Defendant Ritter discriminated against him based upon his disability. (Memo. at 4–6.)

As a threshold matter, the court notes that, although Plaintiff only references Title II of the ADA, Plaintiff alleges violations of the ADA relating both to the conditions of his confinement and his prison employment. As such, pursuant to his *pro se* status, the court liberally construes Plaintiff's Complaint to allege a claim pursuant to Title I of the ADA—which covers discrimination in the employment context—in addition to his claim under Title II.

Nonetheless, to the extent that Plaintiff's Complaint can be construed to allege that Defendant Ritter violated Title I of the ADA, the court finds that these claims must fail because Defendant Ritter is not Plaintiff's employer or any other covered entity within the meaning of the Title I. More specifically, to be liable for a claim under Title I of the ADA, the defendant must be "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. 12111(2), (4); *McGuinness v. Univ. of N.M. Sch. of Med.,* 170 F.3d 974, 979 (10th Cir. 1998). Additionally, Plaintiff is required to "show an employment relationship with the defendant." *McGuinness,* 170 F.3d at 979. However, Plaintiff has not alleged, nor does the court find, any colorable argument that Defendant Ritter is Plaintiff's employer or that any employment relationship exists between Plaintiff and Defendant Ritter. Thus, to the extent that

Plaintiff's Complaint can be construed to allege a claim under Title I of the ADA against Defendant Ritter, the court finds that Plaintiff's claim fails.

The court now turns to Plaintiff's claim that Defendant Ritter violated his rights under Title II. Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, provides that "no qualified individual with a disability shall, by reason of such disability, be . . . subjected to discrimination by any such [public] entity." 42 U.S.C. § 12132.

"To prove a violation of Title II, a party must . . . establish: (1) that he is a 'qualified individual' with a disability; (2) that he was . . . discriminated against by a public entity; and (3) that such . . . discrimination was due to his disability."[3] *Harrington v. Wilson*, 2006 WL 2724094, at *14 (D. Colo. 2006); *see* 42 U.S.C. § 12132. 42 U.S.C. § 12132 also prohibits a plaintiff from being excluded from participation in or denied of "the benefits of the services, programs, or activities of a public entity" by reason of disability.

A plaintiff alleging a violation of Title II can generally prove discrimination in one of three ways: "(1) intentional discrimination; (2) discriminatory impact; and (3) a refusal to make a

---

[3] Title II applies to state prisons and prison services. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

reasonable modification."[4] *Swenson v. Lincoln County Sch. Dist. No. 2*, 260 F. Supp. 2d 1136, 1144 (D. Wyo. 2003); *see Robertson*, 500 F.3d at 1195.

Here Plaintiff's only allegation that Defendant Ritter discriminated against him is that "Governor Bill Ritter . . . refuses to have [the] CDOC recognize migraine disease, epilepsy, [and] chronic back pain (spinal stenosis) as disabilities." (Compl. at 35.) However, beyond this conclusory allegation, Plaintiff's Complaint is entirely devoid of any factual allegations that would give rise to an inference that Defendant Ritter discriminated against Plaintiff under any of the theories outlined above.

First, the allegations in Plaintiff's Complaint do not give rise to a plausible inference that Defendant Ritter intentionally discriminated against Plaintiff. While "intentional discrimination may be inferred when a policymaker act[s] with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy . . . [or] custom," *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153 (10th Cir. 1999), Plaintiff provides no factual allegations giving rise to a plausible inference that Defendant Ritter actually implemented any such policy. Similarly, although it does not appear that the Tenth Circuit has determined whether a disparate impact claim is cognizable under Title

---

[4]  The term "reasonable accommodation" derives from the language of Title I of the ADA, which differs from Title II's use of the term "reasonable modifications," but the Tenth Circuit "has used the terms interchangeably, referring to an individual's request for a 'modification' under Title II as a request for 'accommodation.'" *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1195 n. 8 (10th Cir. 2007).

II of the ADA, it is clear that a prerequisite for any such claim is some practice or policy that is "facially neutral in [its] treatment of different groups but [] in fact fall[s] more harshly on one group than another." *See Gandy v. Zavaras,* No. 09–cv–00205–CMA–KMT, 2010 WL 551408, at *6 (D. Colo. Feb. 11, 2010) (quoting *Ellis v. United Airlines, Inc.,* 73 F.3d 999, 10006 (10th Cir. 1996)). Again, Plaintiff does not support his allegations that Defendant Ritter "refuses to have [the] CDOC recognize" Plaintiff's impairments as disabilities with any factual averments. Therefore, the court finds that Plaintiff's allegations fail to give rise to any plausible inference that Defendant Ritter implemented a distinct policy or practice falling more harshly on individuals with Plaintiff's alleged disabilities.

Finally, the court considers Plaintiff's ADA claims against Defendant Ritter to the extent they allege that Defendant Ritter failed to provide reasonable accommodations for Plaintiff's disabilities. Here, the court finds that Plaintiff does not set forth any allegations that Defendant Ritter knew that Plaintiff's alleged disabilities required accommodations to the conditions of his confinement, or that Plaintiff's need for such accommodation was obvious to Defendant Ritter. *See Hughes v. Colo. Dep't of Corr.,* 594 F. Supp. 2d 1226, 1244–45 (D. Colo. 2009) (holding that even if a defendant does not know that a plaintiff requires reasonable modifications pursuant to Title II of the ADA, a failure to accommodate claim may survive if a plaintiff's need for accommodation was obvious).

Altogether, the court finds that even assuming, for purposes of this Recommendation, that Plaintiff's migraine headaches, epilepsy, and spinal stenosis make him a qualified individual with a disability pursuant to Title II of the ADA, Plaintiff's allegations as to Defendant Ritter in

his individual capacity fail to give rise to a plausible claim that Defendant Ritter discriminated against Plaintiff because of his disabilities.  Accordingly, the court finds that Plaintiff's ADA claims against Defendant Ritter in his individual capacity are properly dismissed.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendant State of Colorado – Office of the Governor Bill Ritter's Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 58) be DENIED IN PART to the extent that the Motion seeks dismissal of Plaintiff's ADA claims against Defendant State of Colorado – Office of the Governor Bill Ritter in his official capacity.

The court further

RECOMMENDS that "Defendant State of Colorado – Office of the Governor Bill Ritter's Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 58) be GRANTED as to all other claims against Defendant State of Colorado – Office of the Governor Bill Ritter in both his official and individual capacities.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 25th day of June, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge