IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–01051–REB–KMT

JOHN NASIOUS,

      Plaintiff,

v.

STATE OF COLORADO - OFFICE OF THE GOVERNOR BILL RITTER;
NURSE MARTHA MUELLER, Physician Health Partners,
DR. BARRY GOLDSMITH, Physician Health Partners,
PAULA FRANTZ M.D. CMO, Colorado Dept. of Corrections,
STEPHEN KREIBS M.D. - Physician, Health Partners Agent of Record,
P.A. BRIAN WEBSTER, Physician Health Partners (Ft Myers, FL),
PA TEJEENDER SINGH, Physician Health Partners,
ARISTEDES ZAVARAS, Executive Director CDOC,
JOSEPH GARY FORTUNADO D.O., Physician Health Partners,
P.A. JOANN STOCK, Physician Health Partners,
NURSE NANCY WHITE, Physician Health Partners,
JOSEPH WERMERS, M.D., Physician Health Partners,
CO ST. MARTIN, Colorado Dept. of Corrections,
CO REGINA JOHNSON, Medical Department Colorado Dept. of Corrections,
CAPTAIN WEINGARDT, Colorado Dept. of Corrections,
LT MARK BOLD, Colorado Dept. of Corrections,
LT JASON ZWIRN, Colorado Dept. of Corrections,,
CATHIE HOLST, Manager of Correctional Legal Services,
ADA Coordinator, AIC CDOC,
ADRIENNE JACOBSON, Legal Assistant AIC/ADA Coordinator CDOC,
SGT BECKY BALL, Colorado Dept. of Corrections,
LT. JIMERSON, Colorado Dept. of Corrections,
MS. HAVERLY LIBRAIAN, Colorado Dept. of Corrections,
JOHN DOE AND JANE DOE, all in their individual and official capacities,

      Defendants.

_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

This matter is before the court on the following motions:

(1)      Defendants Dr. Barry Goldsmith, Stephen Krebs, M.D., P.A. Brian Webster, P.A. Tejinder Singh, Joseph Gary Fortunato, D.O., P.A. Jo Ann Stock, Nurse Nancy White, and CO Regina Johnson's Motion for Summary Judgment with Respect to Plaintiff's Claim for Deprivation of Eighth Amendment Right to be Free from Cruel and Unusual Punishment (Doc. No. 149, filed January 4, 2011);

(2)      Defendants Captain Winger, Major Johnson, Lt. Mark Bold, Lt. Shane McMahill, Lt. Jason Zwirn, CO St. Martin, P.A. Brian Webster, CO Kenneth Lefever, Sgt. Becky Ball, and Lt. Jimerson's Motion for Summary Judgment with Respect to Plaintiff's Claim for Retaliation and Exercise of First Amendment Protected Rights (Doc. No. 150, filed January 4, 2011);

(3)      Defendant State of Colorado - Office of the Governor Bill Ritter's Motion for Summary Judgment Against Plaintiff's Remaining Claim Against Defendant Governor Ritter - Official Capacity for Deprivation of Rights Secured by the Americans with Disabilities Act (Doc. No. 151, filed January 4, 2011);

(4)      Defendants Dr. Barry Goldsmith, Paula Frantz, M.D., C.M.O., Stephen Krebs, M.D., Joseph Gary Fortunato, D.O., P.A. Brian Webster, P.A. Tejender Singh, P.A. JoAnn Stock, and Joseph J. Wermers' Motion for Summary Judgment Against Plaintiff's Claim for Deprivation of Rights Secured by the Americans with Disabilities Act (Doc. No. 152, filed January 4, 2011);

2

(5)     Defendants' Motion for Summary Judgment with Respect to Plaintiff's Claim for Punitive Damages for Deprivation of Rights Secured by the Americans with Disabilities Act (Doc. No. 155, filed January 5, 2011); and

(6)     Defendants Aristedes Zavaras, Cathie Holst, Adrienne Jacobson, and Ms. Heverly's Motion for Summary Judgment with Respect to Plaintiff's Claim for Deprivation of Rights Secured by the Americans with Disabilities Act (Doc. No. 158, filed January 5, 2011).

Plaintiff filed his responses to the Motions on January 25, 2011.  (Doc. Nos. 171 and 171.)  Defendants did not file replies.  The motions are ripe for the court's recommendation and ruling.

## I.      STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation.

Plaintiff is an inmate with the Colorado Department of Corrections (CDOC) at Sterling Correctional Facility (SC.).  (Compl. at 3, ¶ 1.)  In his Complaint, Plaintiff generally alleges that, from September 2006 through October 2009, Defendants provided him inadequate medical treatment, or denied him treatment altogether, for his migraine headaches, epilepsy, and degenerative disc disease.[1]  (*Id.* at 11, 19–23.)  Next, Plaintiff alleges that he was removed from

---

[1]Plaintiff misspells many of the defendants' names.  The court, hereafter, will refer to the defendants with the correct spellings provided by the defendants in their motions.  Additionally, to the extent Defendant Ritter has been sued in his official capacity as Governor of the State of Colorado, the court would normally follow the dictates of Fed. R. Civ. P. 25(d) and substitute the new Governor, John Hickenlooper, but the court declines to do so in light of the conclusions reached in this Recommendation.

the general inmate population and the prison's "Therapeutic Community" program, refused medical treatment, fired from his prison job, and had his property confiscated because he tried to seek medical attention and complained about the adequacy of the treatment he was receiving. (*Id.* at 24–31.)  Plaintiff also alleges that Defendants failed to recognize his migraine headaches, epilepsy, and spinal stenosis as disabilities and failed accommodate these disabilities in his prison employment and the conditions of his confinement. (*Id.* at 32–40.)  Finally, Plaintiff alleges that on November 7, 2008, while "being transfered [sic] back from medical," he was "subjected to a mass strip search which included a completely naked body cavity search in the presence of multiple other inmates and female staff."  (*Id.* at 42.)

Based on these facts, Plaintiff alleges (1) claims pursuant to 42 U.S.C. § 1983 that Defendants were deliberately indifferent to his medical needs and, therefore, violated his rights under the Eighth Amendment to be free from cruel and unusual punishment; (2) claims pursuant to 42 U.S.C. § 1985 that Defendants retaliated against him for exercising his rights to medical treatment and to petition the government for grievances; and (3) claims pursuant to the Americans with Disabilities Act ("ADA") that Defendants discriminated against him based on his epilepsy, migraines, and spinal stenosis by failing to recognize these impairments as disabilities and failing to accommodate these disabilities in his employment and the conditions of his confinement.[2]  Plaintiff has sued all defendants in their official and individual capacities

---

[2]Plaintiff's Claim Four, that his Fourth Amendment rights to be free from unreasonable searches and seizures were violated, was dismissed by Senior District Judge Zita L. Weinshienk on February 22, 2011.  (*See* Doc. No.184.)

(*id.* at 2, 43), seeking injunctive relief, compensatory damages, punitive damages, and legal fees and costs (*id.* at 45).

## II.    *LEGAL STANDARDS*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgments as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  Moreover, because

Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United

States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404

U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a

plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake Cnty*, 584

F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### III.   ANALYSIS

#### A.   Failure to Exhaust Administrative Remedies

Defendants move for summary judgment on Plaintiff's Eighth Amendment and First

Amendment claims for Plaintiff's failure to exhaust his administrative remedies before filing

suit.  (Doc. No. 149 at 24–25; Doc. No. 150 at 24–25.)  The Prison Litigation Reform Act

(PLRA), Title 42 U.S.C. § 1997e(a), provides:  "No action shall be brought with respect to

prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted."  "There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 200–01 (2007);

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").  However, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."  *Roberts v. Barreras*, 484 F.3d 1236, 1241 (2007).  As such, Defendants have the burden of proof on the exhaustion issue and Defendants must establish every element of this affirmative defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).

Defendants argue that Plaintiff has failed to present evidence that he exhausted his administrative remedies on his Eighth Amendment and First Amendment claims.  However, as set forth above, the burden is not on the plaintiff to sufficiently plead exhaustion or attach exhibits proving exhaustion.  *Jones*, 549 U.S. at 201.  Defendants have failed to attach any affidavits or other evidence, and have failed to state specific facts supporting their affirmative defense.  Instead, Defendants simply rest on the conclusory assertions contained in their motions, which is insufficient on a motion for summary judgment.  *See BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999).  As Defendants have not met their burden of establishing every element regarding Plaintiff's alleged failure to exhaust administrative remedies, their motions in this regard are properly denied.

### B.       *Liability of Defendants in Their Official Capacities*

Some of the defendants move for summary judgment on Plaintiff's claims for monetary relief against them in their official capacities.  (*See* Doc. No. 149 at 10–12; Doc. No. 150 at 8–9.)  The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Suits against state officials in their official capacity should be treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief. *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007). Moreover, a § 1983 action may only be brought against a person. *See* 42 U.S.C. § 1983. Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983. *Will*, 491 U.S. at 70-71.

Plaintiff's claims for monetary relief against the defendants in their official capacities constitute claims against the Colorado Department of Corrections. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). Therefore, Plaintiff's official-capacity claims for monetary relief against the defendants are barred by the Eleventh Amendment, and Defendants Goldsmith, Krebs, Webster, Singh, Fortunato, Stock, White, Johnson, Winger, Bolt, McMahill, Zwirn, St. Martin, Webster, Lefever, Ball, and Jimerson are entitled to summary judgment in this regard. *See id.*; *Bennett*, 17 F.3d at 1267.

### C.   Liability of Defendants in Their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). Personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67.

### 1.   Eighth Amendment

The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To establish a claim for deliberate indifference, a plaintiff must first prove that, objectively, his medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). Second, the plaintiff must prove that, subjectively, the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Although an Eighth Amendment claim regarding deliberate indifference to a serious medical need often involves an official's failure to treat a prisoner's serious medical condition properly, it may also arise when a prison official acts with

9

deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel capable of evaluating the need for treatment. *See Sealock v. Colorado*, 218 F.3d 1205, 12011 (10th Cir. 2000).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). In *Ashcroft v. Iqbal*, the Supreme Court held that supervisors can only be held liable for their own misconduct. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Under this decision, a supervisor cannot incur liability under § 1983 for his mere knowledge of a subordinate's wrongdoing. *Id.* After *Iqbal*, the Tenth Circuit has held that a plaintiff may succeed in a § 1983 suit against a defendant-supervisor by demonstrating: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (citing *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)). Even under pre- *Iqbal* standards, a plaintiff had to allege "a deliberate, intentional act by the supervisor to violate constitutional rights," which was present if "the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996). Plaintiff also had to allege an "affirmative link" between "the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise," so as to establish causation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Green v.*

*Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)); *see also Dodds*, 614 F.3d at 1201 n.9; *Stidham*

*v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001).

a.  <strong><em>Defendant Goldsmith</em></strong>

Plaintiff alleges on September 17, 2008, Defendant Goldsmith was deliberately

indifferent to his medical needs "by refusing to prescribe [him] the proper medication despite

acknowledging [his] need for it." (Compl. at 20, ¶ 3.) In his Affidavit, Defendant Goldsmith

states that between September 26, 2006, and August 12, 2009, he had one office visit with the

plaintiff on September 17, 2008. (Doc. No. 149-1 [Goldsmith Aff.], ¶ 6.) Defendant Goldsmith

also states that upon examination, he found no evidence of back pain requiring pain medication

and found Plaintiff's behavior not consistent with a patient in pain. (Ex. 1, ¶ 7.) Defendant

Goldsmith also found Plaintiff has a history of abusing Darvocet and Imitrex. (*Id.*) It was Dr.

Goldsmith's clinical judgment that pain medication was not indicated, and he denied pain

medication accordingly. (*Id.*)

Plaintiff has attempted to create a fact issue to preclude the entry of summary judgment

by creating an affidavit using an exact duplicate of paragraphs 1 through 72 of his Complaint and

adding a notarized signature page. (*See* Doc. No. 171-1 at 11–28.) To raise a genuine issue of

material fact, the nonmoving party must set forth "specific facts" showing a genuine issue for

trial because "there is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249; *cf.*

*Callahan v. Poppell*, 471 F.3d, 1155, 1160 (10th Cir. 2006) (finding that plaintiff's conclusory

allegation not based upon personal knowledge was insufficient to raise a fact issue). In his

11

response, Plaintiff has presented no evidence to dispute that he was seen only once by Defendant Goldsmith.  The only disputed fact is whether Defendant Goldsmith acknowledged that Plaintiff had a medical need for the medication he sought.  Plaintiff has presented only his conclusory allegations, not sufficient evidence to refute Defendant Goldsmith's evidence that Plaintiff's treatment was based on an objective evaluation of Plaintiff's medical needs.  Plaintiff never sets forth any specific statement made by Defendant Goldsmith that would indicate Defendant Goldsmith felt Plaintiff needed pain medication.  In fact, Plaintiff does not dispute and rather specifically concurs that Defendant Goldsmith refused to prescribe pain medication to Plaintiff on September 17, 2008. Plaintiff's claim that Defendant Goldsmith acknowledged a "need" for the medication is not a genuine issue in dispute, given the overwhelming, uncontroverted evidence that Defendant Goldsmith refused to provide pain medication to Plaintiff because Defendant felt there was no medical necessity.  *See Scott*, 550 U.S. at 380.  "The record does not even approach establishing a denial of adequate medical care, much less an issue relating to a culpable state of mind, *i.e.*, a deliberate indifference . . . to . . . medical conditions."  *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993).  For this reason, Plaintiff's allegations do not form a basis for relief pursuant to § 1983.

To the extent Plaintiff's disagrees with the treatment provided, his disagreement does not rise to the level of a constitutional violation.  *See Estelle*, 429 U.S. at 107 (disagreement regarding treatment is not sufficient to maintain a deliberate indifference cruel and unusual punishment claim).  Whether a course of treatment is appropriate "is a classic example of a matter for medical judgment," that is insufficient to sustain a claim under the Eighth

Amendment.  *Estelle*, 429 U.S. at 107 (noting that medical decision to forego one form of treatment may be negligence but is not a constitutional violation).  *See also Perkins v. Kansas Dep't Corrs.*, 165 F .3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of opinion does not support a claim of cruel and unusual punishment"); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating [medical provider] . . . is . . . insufficient to establish a constitutional violation.") (citations omitted).  The medical evidence in the record contradicts Plaintiff's conclusory allegations.  As a layperson untrained in medicine, Plaintiff is not qualified to determine the proper course of treatment for his medical condition or to contradict the medical evidence in the record.  *See Barrett v. Coplan*, 292 F.Supp.2d 281, 285 (D.N.H. 2003) ("Adequate medical care requires treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations.") (internal quotation marks and citation omitted).  Plaintiff's disagreement with his medical treatment does not form a basis for relief pursuant to § 1983.

Finally, temporary denials of medications cannot serve as the basis for a deliberate indifference claim.  *Lane v. Klinger*, 25 F. App'x 781, 783–84 (10th Cir. 2001) (finding no Eighth Amendment claim where pain medication denied for three hours); *Jackson v. Simmons*,

13

No. Civ. A. 99-3363-KHV, 2001 WL 951008, at *5 (D. Kan. July 26, 2001) (finding no Eighth

Amendment claim where pain medication denied for one day).

Here, even the conclusory allegations raised by Plaintiff in his "affidavit" lack any

supporting specific facts necessary to show that Defendant Goldsmith's conduct rises to the level

of an Eighth Amendment violation.  Defendant Goldsmith is entitled to summary judgment on

Plaintiff's Eight Amendment violations.

### b.      *Defendant Krebs*

Plaintiff alleges Defendant Krebs deprived him of his Eighth Amendment rights because

he "is the Head of Physician Health Partners (PHP).  Dr. Kreibs [sic] is responsible for the day to

day operations of PHP and the actions of PHP staff . . . ."  It appears that Plaintiff attributes

liability to Defendant Krebs merely based on his supervisory role.  The state of mind required to

establish a § 1983 claim based on supervisory liability is the state of mind requirement that is

tied to the underlying constitutional provision at issue.  *Iqbal*, ___ U.S. ___, 129 S. Ct. at 1948;

*Dodds*, 614 F.3d at 1204–1205.  To establish a violation of § 1983 by a supervisor, the plaintiff

must, at minimum, establish a deliberate and intentional act on the part of the defendant to

violate the plaintiff's legal rights.  *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010).

It is undisputed that Defendant Krebs has never met or had any personal interaction with

the plaintiff (*see* Doc. No. 149-2, ¶ 6), and that Defendant Krebs' only involvement with

Plaintiff was to analyze referrals for treatment or tests and either to approve or deny the referrals

(*id.*, ¶ 5).  Plaintiff has stated no facts and has provided no evidence to support a conclusion that

Defendant Krebs "promulgated, created, implemented or possessed responsibility for the

14

continued operation of a policy that (2) caused the complained of constitutional harm, and (3)

acted with the [deliberate indifference] required to establish the alleged [Eighth Amendment]

deprivation." *Dodds*, 614 F.3d at 1199-1200.

As Plaintiff has failed to demonstrate a genuine issue for trial on this matter, Defendant

Krebs is entitled to summary judgment on Plaintiff's Eighth Amendment claims. *Concrete*

*Works, Inc.*, 36 F.3d at 1518.

### c.     *Defendant Webster*

Plaintiff alleges Defendant Webster violated his Eighth Amendment rights by "alter[ing]

[his] longstanding migrain[e] diagnosis to cluster headaches . . . ." (Compl. at 18, ¶ 1.)  Plaintiff

alleges that, due to this "misdiagnosis," Defendant Webster began giving him trigger point

injections.  (*Id.*)

In his Affidavit, Defendant Webster states that he saw Plaintiff on numerous occasions

regarding Plaintiff's alleged degenerative disc disease and migraine headaches, including on

May, 07, 2008, May 15, 2008, July 01, 2008, July 2, 2008, August 22, 2008, October 3, 2008,

October, 08, 2008, October 28, 2008, December 02, 2008, January 22, 2009, April 07, 2009 and

April 17, 2009.  (Doc. No. 149-3, ¶6.)  The medical records provided with Defendant Webster's

affidavit show that Defendant Webster treated Plaintiff for  headaches and migraine headaches.

(*See id.* at 7–22.)  On May 7, 2008, May 15, 2008, and August 22, 2008, Defendant Webster

obtained informed consent to administer trigger point injections to Plaintiff.  (*Id.*, ¶ 7, 8, 11; *see*

*id.* at 7–8, 11.)  On May 7, 2008, Plaintiff related that "his head felt much better within minutes"

of the injection.  (*Id.* at 7.)  On May 15, 2008, Plaintiff stated that the trigger point injections

were helpful for several days, but that the headaches returned.  (*Id.* at 8.)  On July 2, 2008,

Plaintiff advised Defendant Webster that the trigger point injection did help his headaches.  (*Id.*

at 10.)  On August 22, 2008, Plaintiff advised Defendant Webster that the trigger point injections

helped and requested "more TPI's today."  (*Id.* at 11.)  After injection, Plaintiff "experienced

very good relief."  (*Id.*)  The records also reflect that, in response to kites and requests made by

Plaintiff, on July 1, 2008, October 28, 2008, December 2, 2008, January 22, 2009, April 7, 2009,

and April 17, 2009, Defendant Webster provided Plaintiff with prescriptions he requested for his

headaches (*see id.* at 11, 15, 16) or made Non-Formulary Drug Requests on Plaintiff's behalf

(*see id.* at 9, 14, 17–18, 19–22).

Though Plaintiff alleges Defendant Webster changed his diagnosis from migraine

headaches to cluster headaches, the evidence provided by the parties directly contradict this

allegation.  The records provided are devoid of any reference to a diagnosis of "cluster

headaches" and, in fact, the records from Plaintiff's visits from May 7, 2008, August 22, 2008,

October 3, 2008, October 8, 2008, October 28, 2008, April 7, 2009, and April 17, 2009, indicate

Plaintiff was being treated by Defendant Webster for migraine—not cluster—headaches.  (Doc.

No. 149-3 at 7, 11, 12, 13, 14, 21 and 22.)  Plaintiff's allegation that Defendant Webster changed

his diagnosis to cluster headaches is not a genuine issue in dispute, given the overwhelming,

uncontroverted evidence of Defendant Webster's continual treatment of Plaintiff's diagnosed

migraine headaches.  *See Scott*, 550 U.S. at 380.  Further, as noted, whether the diagnosis was

changed or not is immaterial to the claim because it is clear Defendant Webster was treating

Plaintiff for his headaches.

It is undisputed that Plaintiff was given trigger point injections for his headaches. Plaintiff alleges the "improper administration" of the trigger point injections caused him long-lasting pain.  (Compl. at 18, ¶ 1.)  While it is undisputed, and the records show, that Plaintiff was seen many times for headaches, Plaintiff has failed to offer "specific facts [ ] sufficient to raise a 'genuine issue of material fact' " that Defendant Webster improperly administered the trigger point injections or that any pain was related to the improper administration of the injections.  *See BancOklahoma Mort. Corp.*, 194 F.3d at 1097 (citing *Anderson*, 477 U.S. at 247–48).  Without citation to the record, Plaintiff's assertions are merely conclusory and cannot serve to create a genuine issue of fact to survive summary judgment.  *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) (noting conclusory allegations without citation to the record are insufficient to create a genuine issue of fact to defeat summary judgment.).  Thus, even examining the evidence in the light most favorable to Plaintiff, *see BancOklahoma Mort. Corp.*, 194 F.3d at 1098, the record does not support Plaintiff's position.  Moreover, to the extent Plaintiff's disagrees with the treatment provided, his disagreement does not rise to the level of a constitutional violation.  *See Estelle*, 429 U.S. at 107

Plaintiff also alleges on July 2, 2008, Defendant Webster "refused to give [him] treatment telling [him] all [his] problems were because [he] was fat."  (*Id.*)  The record of Plaintiff's examination on July 2, 2008, notes an Assessment of "Morbid Obesity."  (Doc. No. 149-3 at 10.) Defendant Webster states that on August 22, 2008, he "discussed Plaintiff's obesity (BMI 29) and the benefit of low back exercises and a walking program."  (*Id.*, Doc. No. 149-3, ¶ 11; at 11.) The records from these dates contradict Plaintiff's allegation that Defendant Webster refused to

17

treat him because of his obesity.  In fact, despite the reference to Plaintiff's morbid obesity, on

July 1, 2008, Defendant Webster, pursuant to Plaintiff's request, submitted a Non-Formulary

Drug Request for "Topamax to help prevent [Plaintiff's] headaches." (*Id.* at 9, 22.)  The Drug

Request was approved on July 17, 2008.  (*Id.* at 22.)  On August 22, 2008, again despite a

discussion about Plaintiff's obesity, Defendant Webster, at Plaintiff's request, provided trigger

point injections, and Plaintiff experienced good relief.  (*Id.* at 11.)   The court finds there is not a

genuine issue in dispute regarding whether Defendant Webster failed provide treatment to

Plaintiff because of his obesity, given the uncontroverted evidence provided by Defendant

Webster.  *See Scott*, 550 U.S. at 380.

Plaintiff has failed to establish any genuine dispute of material fact pertinent to whether

Defendant Webster was deliberately indifferent to Plaintiff's serious medical needs.  As such,

Defendant Webster is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

### d.    *Defendant Singh*

Plaintiff alleges Defendant Singh violated his Eighth Amendment rights by, from

December 15, 2006, to February 11, 2007, failing to treat Plaintiff after a seizure and telling

Plaintiff "there was nothing wrong with my diffuse degenerative disc disease and migraine

disorder." (Compl. at 21, ¶ 5.)  Plaintiff also alleges Defendant Singh refused to provide medical

care and gave him medication to which he has an allergy.  (*Id.*)

In his Affidavit, Defendant Singh states he evaluated Plaintiff on May 21, 2007, May 31,

2007, and August 30, 2007.  (Doc. 149-4, ¶ 6.)  The records reflect Plaintiff was seen by Mr.

Singh for back pain and migraine headaches.  (*See id.* at 4–6.)  Defendant Singh avers he

prescribed appropriate medication and an exercise regimen and counseled Plaintiff to lose weight. (*Id.*, ¶ 6; at 4.)  On May 21, 2007, Defendant Singh prescribed Nortriptyline to Plaintiff for thirty days. (*Id.*, ¶ 7; at 4.)  On May 31, 2007, Plaintiff reported that he had an allergic reaction to Nortriptyline and broke out in a rash. (*Id.*¶ 7; at 5.)  Defendant Singh observed no signs of distress. (*Id.* at 5.)  Defendant Singh also states that Nortriptyline is a Med-line medication, and according to the Electronic Medication record for the entire thirty days, Plaintiff did not take a single dose of Nortriptyline. (*Id.*, ¶ 7.)

It is disputed whether Defendant Singh treated Plaintiff from December 15, 2006, through February 11, 2007.  The records provided by Defendant Singh show he provided Plaintiff with medication and treatment for his back pain and headaches on May 21, 2007, May 31, 2007, and August 30, 2007.  On the other hand, Plaintiff has failed to provide any evidence showing that Defendant Singh refused to treat Plaintiff during the time period December 15, 2006, through February 11, 2007.  Finally, though there is no dispute that Defendant Singh prescribed Nortriptyline to Plaintiff, the records are devoid of any evidence of an allergic reaction to the medication.  The evidence presented by Defendant Singh shifted the burden to Plaintiff to present specific facts in dispute. *John Hancock Mutual Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994).  The generalized allegations in Plaintiff's Complaint and affidavit are not responsive to the factual evidence provided by the defendant. *Weisman*, 27 F.3d at 503 (citations omitted).  Without specific facts supporting his claims, Plaintiff's bare assertions are insufficient to raise a genuine issue for trial.

Moreover, even if this court could conclude that Plaintiff has raised fact issues regarding Defendant Singh's allegedly prescribing a medication to which Plaintiff is allergic, the issue raised is immaterial.  Whether or not Plaintiff was given a medication to which he had an allergy is immaterial because it would not, as Plaintiff suggests, necessarily compel the conclusion Defendant Singh gave the prescription with deliberate indifference to Plaintiff's serious medical needs.  The record from the date Defendant Singh prescribed the medication to Plaintiff shows allergies to Depakote, Dilantin, Inderal, Midrin, and Tegretol.  (Doc. No. 149-4 at 4.)  Plaintiff has produced no evidence showing that he ever informed Defendant Singh or any other CDOC medical provider that he was allergic Nortriptyline.  Thus, there is no showing that Defendant Singh was aware of Plaintiff's alleged allergy, which precludes inferring deliberate indifference from Defendant Singh's prescription of the medication.  *See Farmer*, 511 U.S. at 837-38.

Accordingly, Defendant Singh is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

### e.      *Defendant Fortunato*

Plaintiff claims on September 11, 2008, Defendant Fortunato refused to conduct an examination and told Plaintiff Imitrex was too expensive and that Plaintiff would never get it. (Compl. at 20, ¶ 4.)  Plaintiff alleges Defendant Fortunato demonstrated deliberate indifference by choosing a less effective means of care.  (*Id.*)

Defendant Fortunato, in his Affidavit, states he evaluated Plaintiff on September 11, 2008.  (Doc. No. 149-5, ¶ 6.)  The purpose of the appointment was to discuss a medication change from Zomig to Imitrex and to discuss Hepatitis vaccinations.  (*Id.*, ¶ 8; at 5.)  The

medical record for that visit reflects that Plaintiff stated he was allergic to Zomig.  (*Id.* at 5.)

 Defendant Fortunato explained to Plaintiff that his records going back to 2007 contained no

information regarding an allergy to Zomig.  (*Id.*)  Defendant Fortunato also noted that Plaintiff's

records "induicate [sic] abuse of medications [t]o include Darvocet and Imitrex."  (*Id.*)

Defendant Fortunato states the record does not reflect any discussion about the cost of either

medication, that no such discussion took place, and that he is unaware of the cost of either drug.

(*Id.*, ¶ 9.)

There is a dispute about whether a conversation regarding the cost of the medication took

place and whether the decision to treat Plaintiff was based on the cost of the medication.

Nevertheless, assuming a resolution of the dispute in Plaintiff's favor that such a conversation

did take place, a prisoner is not constitutionally entitled to unlimited medical care without regard

to cost.  *See Taylor v. Barnett*, 105 F. Supp.2d 483, 489 n.2 (E.D. Va. 2000) ("While inmates are

entitled to adequate medical care under the Eighth Amendment, they are not entitled to the best

and most expensive form of treatment." (citation omitted)).  Cost is a legitimate consideration,

*see Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006), and the constitution permits

officials to decline certain kinds of expensive treatment so long as they provide adequate medical

care.  *See Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987) ("the local government's

interest in limiting the cost of detention justifies providing no more than a reasonable level of

medical care"); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1573 (11th Cir. 1985) ("The state's

interest in limiting the cost of detention . . . ordinarily will justify the state's decision to provide

detainees with a reasonable level of . . . medical care.").  Plaintiff has failed to allege any facts or

provide any evidence that the treatment he received with the allegedly less-expensive medication was unreasonable or inadequate.  Therefore, the recognized dispute of fact in this case is immaterial.

Plaintiff's allegations that he was not examined by Defendant Fortunato on September 11, 2008, and that he was given allegedly less-expensive medication are contradicted by the evidence.  The medical record from that date shows that Defendant Fortunato conducted an evaluation of Plaintiff, took his vital signs, discussed Plaintiff's wish to be vaccinated for Hepatitis A and B prophylactically, and discussed Plaintiff's wish to receive Imitrex rather than Zomig.  (Doc. No. 149-5 at 5.)  The records also show that Defendant Fortunato chose Zomig, rather than Imitrex, because of Plaintiff's history of abuse of Imitrex.  (*Id.*)  The evidence provided by Defendant Fortunato shifted the burden to Plaintiff to present specific facts in dispute.  *See Weisman*, 27 F.3d at 503.  Plaintiff has failed to meet this burden.  Thus, Plaintiff's allegations are not genuine issues in dispute, given the uncontroverted evidence provided by Defendant Fortunato.  *See Scott*, 550 U.S. at 380.

Further, even if this court could conclude that Plaintiff has raised fact issues regarding Defendant Fortunato's allegedly prescribing a less-expensive medication to which Plaintiff is allergic, the issue raised is immaterial because it does necessarily compel the conclusion Defendant Fortunato gave the prescription with deliberate indifference to Plaintiff's serious medical needs, especially in light of the evidence that Defendant Fortunato prescribed Zomig because of Plaintiff's history of past abuse of Imitrex.  (*See* Doc. No. 149-5 at 5.)

As such, summary judgment should be entered in favor of Defendant Fortunato on

Plaintiff's Eighth Amendment claims.

### f.      Defendant Stock

Plaintiff alleges Defendant Stock has been deliberately indifferent to his serious medical

needs "on multiple occasions," including on August 4, 2008, when she refused Plaintiff's

attempt to get proper medication.  (Compl. at 21, ¶ 4.)  Plaintiff alleges Defendant Stock said he

had "drug seeking behavior."  (Id.)  Plaintiff also contends that Defendant Stock prescribed a

medication to be given four times per day, knowing that SCF distributes medication only two

times per day.  (Id.)

In her Affidavit, Defendant Stock states she has seen Plaintiff for treatment on multiple

occasions, including March 26, 2008, April 16, 2008, May 13, 2008, June 9, 2008, and August 4,

2008.  (See Doc. No. 149-6.)  On March 26, 2008, Defendant Stock evaluated Plaintiff for "an

increase in Topamax" for high stress and recurrent headaches."  (Id. at 6.)  Defendant Stock

submitted a Non-Formulary Drug Request on that day for an increase of Plaintiff's Topamax

medication.  (Id. at 7.)  On April 16, 2008, Defendant Stock saw Plaintiff for back pain.  (Id. at

8.)  Plaintiff stated that he cannot take Motrin or Naprosyn as they upset his stomach.  (Id.)  At

that time, Defendant Stock prescribed medication called Robaxin, which is a muscle relaxer.

(Id., ¶ 7; at 8.)  Plaintiff stated he had allergies to Depakote, Dilantin, Midrin, Propanolol and

Tegretol, which are all common seizure medications.  (Id., ¶ 7; at 8.)

On May 13, 2008, Defendant Stock saw Plaintiff when he complained of "irrectractable

migraine headache."  (Id. at 9.)  The physical exam showed no sign of photophobia, which is

23

common for migraine headaches. (*Id.*, ¶8; at 9.) Plaintiff stated that he cannot take NSAIDs due to allergies. (*Id.* at 9.) Plaintiff requested a shot of Nubain, which Defendant Stock informed him the medical department did not have. (*Id.*) Defendant Stock agreed to try Darvocet, agreeing to limit the medication to only three days per month. (*Id.*) On June 9, 2008, Defendant Stock was informed that Plaintiff was using Darvocet four times a day, every day, and not limited to their prior agreement of approximately three pills of Darvocet per month. (*Id.*, ¶ 9; at 10.) Defendant Stock noted Plaintiff was abusing the medication and discontinued it. (*Id.*)

On August 4, 2008, Defendant Stock saw Plaintiff when he was again asking for narcotic pain relief. (*Id.*, ¶10; at 11.) Plaintiff stated an "incredibly painful headache." (*Id.* at 11.) However Plaintiff's vital signs were normal, and Defendant Stock observed no pain symptoms. (*Id.*) Defendant Stock suggested nonnarcotic medications at that visit, but Plaintiff would not discuss anything but narcotic pain relievers. (*Id.*) Defendant Stock tried to explain that the Department of Corrections does not use narcotics except under extreme circumstances. (*Id.*, ¶ 10.) Defendant Stock asked Plaintiff to leave the exam room "since he doesn't want to talk about anything except narcotic pain relief." (*Id.* at 11.) Defendant Stock noted that she felt "strongly that this is drug-seeking behaviour [sic] at its best." (*Id.*)

There are no disputes that Defendant Stock saw Plaintiff on August 4, 2008, that Defendant Stock refused to give Plaintiff any additional narcotics, and that she believed Plaintiff was exhibiting drug-seeking behavior. The only dispute concerns Plaintiff's conclusion that on August 4, 2008, Defendant Stock "refused Plaintiff's attempt to get proper medication." (*See* Compl. at 21, ¶ 4.) As noted *supra*, a disagreement over a course of treatment does not amount

24

to a constitutional violation. *Ramos*, 639 F.2d at 575; *Perkins*, 165 F.3d at 811. To the extent Plaintiff believes a different medication would have been more effective for him, this disagreement over the best course of treatment does not amount to deliberate indifference. *See Perkins*, 165 F.3d at 811. Case law firmly establishes that prisoners do not have the right to receive any and all medical treatments that they choose. *Estelle*, 429 U .S. at 106.

There is no dispute that Defendant Stock refused to provide Plaintiff with the medication he sought because of what she believed was drug-seeking behavior. The evidence provided by Defendant Stock shows that Defendant Stock was concerned about Plaintiff's past history of drug abuse and overuse. The records also reflect that Plaintiff was offered alternative medications but refused because he insisted on obtaining a narcotic. On the other hand, Plaintiff has provided no evidence of Defendant Stock's subjective desire to cause harm to Plaintiff by her refusal to continue providing Darvocet or another narcotic.

Given the uncontroverted evidence, Plaintiff's conclusory claim that Defendant Stock was deliberately indifferent to his medical needs for her refusal to provide "proper medication" is not sufficient to meet his burden to prove that Defendant Stock violated his Eighth Amendment rights. Based on this record, no issue of disputed fact exists material to Plaintiff's Eighth Amendment claim of deliberate indifference to his medical conditions, and Defendant Stock is entitled to summary judgment.

### f.    *Defendant White*

The only allegation made by Plaintiff against Defendant White is that she, on April 1, 2009, refused to provide him with his prescribed medication. (Compl. at 22, ¶ 7.) This

allegation is undisputed.  However, Plaintiff still has failed to show that there is a genuine

dispute as to any material fact pertinent to the an Eighth Amendment claim based on alleged

deliberate indifference to his serious medical needs.

Defendant White, in her Affidavit, states that on April 1, 2009, Plaintiff went to the

medical clinic complaining of a migraine headache.  (Doc. No. 149-7, ¶ 6.)  According to

Defendant White, no officer had called to ask if Plaintiff could go to the medical clinic to get

medication, and therefore Plaintiff was informed that he needed to go back to his unit and have

an officer call the medical clinic.  (*Id.*)  Defendant White states that Plaintiff returned to his unit,

but the officer did not call the medical clinic to request that Plaintiff be seen.  (*Id.*)

In Plaintiff's grievance related to this matter, Plaintiff concedes that he was sent back to

his unit after being taken to the medical unit without a phone call.  (Doc. No. 170 at 65.)  In

response, Defendant White advised Plaintiff that he needed to follow the proper procedure and

have his commanding officer contact the medical until to notify them of his problem so the

medical unit could "check to see what med you need, & how often you get it.  When you just

drop in to medical and expect immediate tx, you will be sent back to your unit."  (*Id.*)

In this case, Plaintiff has failed to provide evidence showing any deliberate indifference

by Defendant White.  Plaintiff has failed to allege facts or provide evidence that Defendant

White "kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health and safety."  *Farmer*,

511 U.S. at 837.  There is no evidence that Defendant White was aware of Plaintiff's medical

history, of the medications Plaintiff was able to take, or the reason for the prescription.

Moreover, the evidence shows that Defendant's refusal to provide the medication when he

showed up the medical clinic without following policy was based on her need to obtain that information prior to seeing the plaintiff.  There is no evidence of any subjective motive to cause harm to Plaintiff.

Accordingly, because there is no genuine dispute of any material fact, summary judgment should be entered in favor of Defendant White on Plaintiff's Eighth Amendment claims.

### g.    *Defendant Johnson*

Finally, Plaintiff's only allegation against Defendant Regina Johnson is that she was deliberately indifferent to his serious medical needs "by twice refusing to allow [him] to get [his] medication."  (Compl. at 21–22, ¶ 6.)  In her Affidavit, Defendant Johnson explains that as a Medical Officer-Correctional Officer 1, her duties were to make sure inmates had a valid pass for the clinic and to sign them in and to ensure the safety of the nurses and other medical providers.  (Doc. No. 149-8, ¶¶ 5–6.)  Defendant Johnson states she does not provide medical services to the inmates and does not have authority or ability to deny an inmate his medication. (*Id.*, ¶ 7.)

The Tenth Circuit has stated:

> Ordinarily, a medical professional will not be liable for this second kind of deliberate indifference, because he is the person who provides the treatment.  If, however, the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care.

*Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).  Given the evidence provided by Defendant Johnson, and in light of Plaintiff's pure conclusory allegation, the burden shifted to

27

Plaintiff to provide factual support for his allegations.  *Weisman*, 27 F.3d 500, 503.  The undisputed evidence shows that Defendant Johnson is not a medical provider and, as such, is not liable for a failure to provide medical treatment.  *Sealock*, 218 F. 3d at 1211.  Moreover, to the extent Defendant Johnson may be liable in her capacity as a gatekeeper, Plaintiff's Complaint and his response are devoid of <u>any</u> factual allegations, and Plaintiff has not provided any evidence, regarding how Defendant Johnson may have "delay[ed] or refuse[d] to fulfill [her] gatekeeper role," *see id.*, or how Defendant Johnson "prevented" him from obtaining medication.

The record simply does not demonstrate any evidence that Defendant Johnson acted with deliberate indifference to Plaintiff's medical needs.  That is, Plaintiff has not sufficiently alleged that Defendant Johnson knew of and disregarded "an excessive risk to [Plaintiff's] health and safety." *Farmer*, 511 U.S. at 837.  Accordingly, giving the plaintiff the benefit of all the favorable inferences to which he is entitled from the evidence in the record, which the court must do on summary judgment, the court concludes that summary judgment must be granted in favor of Defendant Johnson on Plaintiff's Eighth Amendment claims.

## 2.    *First Amendment Retaliation Claims*

Plaintiff alleges he has "been subjected to retaliation when [he] has excercised [sic] [his] rights, [his] protected right to seek medical attention and petition the goverment [sic] for redress of grievances."  (Compl. at 11.)  Plaintiff states he has filed grievances with the CDOC, the State Board of Medical Examiners, and the State Board of Dental Examiners.  (*Id.*)

A plaintiff asserting a retaliation claim against the government for exercising his First Amendment rights must prove the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).  To establish a claim for retaliation, a plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."  *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990) (quotations omitted).

Defendants argue that they should be granted summary judgment on Plaintiff's retaliation claims for the defendants' lack of personal participation.  (Doc. No. 150 at 9–21.)  A defendant cannot be held liable in a § 1983 action unless he or she caused or personally participated in the alleged constitutional violation.  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  A *respondeat superior* theory of liability cannot form the basis of a § 1983 claim.  *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).

### a.   *Defendants Involved in Removal from Population and Disciplinary Convictions*

Plaintiff alleges that Defendant Wingert approved his Removal from Population (RFP) "for exersice [sic] of [his] protected right to seek medical attention and address issues of public concern.  RFP is an adverse action resulting from [his] excercise [sic] of [his] protected rights." (Compl. at 25, ¶ 17.)  In her Affidavit, Defendant Wingert states that at the time of the alleged incident, she was Shift Commander for the SC., and she was providing command and supervisory authority with decision making-authority and responsibility to ensure normal

29

operations.  (Doc. No. 150-8, ¶ 5.)  Defendant Wingert avers on October 9, 2009, she was

informed by Defendants St. Martin and Johnson of an incident involving Plaintiff.  (*Id.*, ¶ 6.)

Following the incident, Plaintiff was transported to Defendant Wingert's office, where she

counseled Plaintiff.  (*Id.*)  Plaintiff then was removed from the general prison population.  (*Id.*)

Plaintiff alleges Defendant Major Johnson "approved [his] RFP for excersise [sic] of

[his] right to seek medical attention and address issues of public concern.  RFP is an adverse

action resulting from [his] excercise [sic] of [his] protected rights."  (Compl. at 25–26, ¶ 19.)

Defendant Johnson avers on October 29, 2008, he was working as the East Custody/Control

Manager, and that his knowledge of the incident alleged in Plaintiff's Complaint was limited to

reviewing the incident the following morning as part of his daily routine.  (Doc. No. 150-8, ¶ 7.)

Plaintiff alleges Defendant Bolt "was responsible for investigating and approving the

COPD charges resulting from the above mentioned incidents" and that he "participated in the

adverse action resulting from [his] exercising [his] protected right."  (Compl. at 28, ¶¶ 22–23.)

Defendant Bolt states he was Reviewing Supervisor for Plaintiff's case, arising out of the

incident occurring on October 29, 2008.  (Doc. No. 150-4, ¶ 5.)  Defendant Bolt's duties were to

investigate a possible violation of the Code of Penal Discipline (COPD), including an

investigation of the reports written and speaking with staff and offenders involved to determine

whether there was a possible violation.  (*Id.*)  During the course of the investigation into the

incident involving Plaintiff, Defendant Bolt found that Plaintiff had violated Class II, Rule 16,

and forwarded a charge under the COPD.  (*Id.*, ¶ 6.)

Plaintiff alleges Defendant McMahill "was responsible for investigating and approving the COPD charges" at a hearing on November 13, 2008. (Compl. at 28, ¶ 24.) Plaintiff alleges Defendant McMahill "was responsible for prosecuting the COPD charges resulting from the above mentioned incidents" and that he "participated in the adverse action which resulted from [his] exercising [his] protected rights." Defendant McMahill states he was the Disciplinary Officer who presented the CDOC's case against Plaintiff on November 18, 2008. (Doc. No. 150-5, ¶ 5.) Defendant McMahill was given a notice of charge written by Defendant St. Martin, which showed Plaintiff "advocating in west medical." (*Id.*, ¶ 6.) Defendant McMahill used the Notice of Charge as evidence to present the CDOC's case. (*Id.*) Defendant McMahill's states his only knowledge of the case is what was contained within the Notice of Charge. (*Id.*) Defendant McMahill presented that Plaintiff did cause a disruption in medical and first responders had to be called due to Plaintiff's actions. (*Id.*)

Plaintiff alleges Defendant Zwirn "was responsible for hearing the COPD charges" and "in finding [him] guilty." Defendant Zwirn states that he on November 18, 2008, he was the hearings officer for Plaintiff's rule infractions for Class II 16, advocating or creating a facility disruption, and Class II 19, unauthorized possession. (Doc. No. 150-6, ¶ 6.) Defendant Zwirn states, "Plaintiff was found guilty of advocating as he was being disruptive in medical and required additional staff to be pulled from their normal duties to deal with his disruptive action." (*Id.*) Plaintiff also was found guilty of unauthorized possession for having three books that did not belong to him and an unauthorized legal box. (*Id.*)

Plaintiff alleges that after he complained to Defendant St. Martin that the medical accommodations at the prison facility do not allow for prompt emergency treatment, Defendant St. Martin "had [him] removed from population and gave [him] a Code of Penal Discipline Report [COPD]."  (Compl. at 25, ¶ 14.)  Plaintiff further alleges that Defendant St. Martin fabricated the incident report and that but for Plaintiff exercising his protected rights, he would not have suffered removal and COPD write-ups, which he states are adverse actions.  (*Id.*)  Defendant St. Martin states that on October 29, 2008, he was working in the west medical unit as Hub Hall Officer, conducting escorts from west medical to the east side.  (Doc. No. 150-1, ¶¶ 5.)  Upon his arrival to west medical, Defendant St. Martin was informed by Defendant Regina Johnson that Plaintiff was advocating and refusing to leave west medical as ordered.  (*Id.*, ¶ 6.)  Once Defendant St. Martin opened the holding cell to release the east side prisoners, Plaintiff began to raise his voice and engage in an argument with Defendant Johnson regarding medication he requested from the doctor.  (*Id.*, ¶ 7.)  Defendant St. Martin avers that Plaintiff was noncompliant and demanded to see the shift commander.  (*Id.*)  Plaintiff threw his pass on the ground and proceeded to yell at Defendant Johnson, stating that he would not leave until he was seen by the shift commander.  (*Id.*) Defendant St. Martin gave Plaintiff two loud verbal commands to turn around and cuff up.  (*Id.*, ¶ 8.)  Plaintiff took approximately two steps toward Defendant Johnson and other inmates in the hallway while yelling at Defendant Johnson, who had her back to Plaintiff at that time.  (*Id.*)  Defendant St. Martin attempted to place Plaintiff in handcuffs, at which point he resisted and began to pull away from Defendant St. Martin.  (*Id.*)  Defendant St. Martin attempted to place Plaintiff into the nearest wall, but Plaintiff was

32

passively resisting by going limp to the ground. (*Id.*)  Defendant Johnson called for first

responders to west medical and Plaintiff was placed into handcuffs.  (*Id.*)

It is well settled that prisoners' filing of grievances is activity protected by the First

Amendment.  *See Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996).  However, Plaintiff

has failed to allege or to provide any factual evidence that the defendants' actions caused him to

suffer an injury that chilled him from continuing to file grievances in the future.  *See Shero*, 510

F.3d at 1203.  To the contrary, the hundreds of pages of exhibits provided by Plaintiff with his

response show that Plaintiff has continued to file an inordinate number of grievances and has

continued to file complaints with the CDOC, the State Board of Medical Examiners, and the

State Board of Dental Examiners, as well as lawsuits in this Court.  (*See* Doc. Nos. 170 and 171.)

Moreover, Plaintiff has failed to provide evidence regarding any injury or adverse consequences

caused by the COPD convictions or by being removed from the general prison population.

Finally, Plaintiff has failed to provide any evidence that the defendants' adverse actions

were substantially motivated as a response to Plaintiff's filing of grievances.  The Tenth Circuit

has recognized that, in retaliation claims, the presentation of circumstantial evidence such as

temporal proximity, a chronology of events, or suspicious timing may be sufficient to support

allegations of retaliation.  *See Maschner*, 899 F.2d at 949 (holding that the inmate sufficiently

supported retaliation claim with "only means available to him-circumstantial evidence of the

suspicious timing of his discipline, coincidental transfers of his witnesses and assistants").

However, here Plaintiff does not provide any chronology of events or any direct or

circumstantial evidence from which the court could plausibly conclude that retaliation for

protected activities occurred.  The only allegations are that in response to Plaintiff's disruption in the west medical unit, certain of the defendants took action with which Plaintiff apparently disagrees.  Indeed, Plaintiff offers no more than his bare assertions that Defendants were motivated to retaliate against him for his filing of grievances. Plaintiff has provided no more than "his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).  Plaintiff's bare, conclusory assertions are insufficient to raise a fact issue.  *See Callahan*, 471 F.3d at 1160.

Moreover, even viewing Plaintiff's allegations in the light most favorable to him, they do not establish that the defendants had a retaliatory motive.  *See Dawson v. Johnson*, 266 F. App'x. 713, 716 (10th Cir. 2008) (finding allegations that defendants presided over disciplinary hearing, investigated charge, presented facts in support of charge at disciplinary hearing, and affirming conviction insufficient to establish motive or personal participation in retaliation claim).  The undisputed evidence shows that Defendant Wingert's only involvement was that she counseled Plaintiff before he was removed from the general population; Defendant Major Johnson's only involvement was reviewing the October 29, 2008, incident report the morning after the incident occurred as part of his daily routine; Defendant Bolt's only involvement was that he investigated Plaintiff's possible violation of the COPD and forwarded the COPD charge; Defendant McMahill's only involvement was that he investigated the possible COPD violation and presented facts in support of the charge at the hearing; and Defendant Zwirn's only involvement was that he attempted to restrain Plaintiff during the October 29, 2008, incident.

Accordingly, Defendants Wingert, Major Johnson, Bolt, McMahill, and St. Martin are entitled to summary judgment on Plaintiff's retaliation claims.

### b.      Defendant Webster

Plaintiff alleges Defendant Webster retaliated against Plaintiff by refusing to see him and talking to Defendant "Weingardt [sic] on the phone and recommending the RFP for [his] excersise [sic] of [his] right to seek medical attention and address issues of public concern because Plaintiff filed a complaint against Mr. Webster with the Colorado State Board of Medical Examiners."  (Compl. at 26, ¶ 19.)  Again, Plaintiff has failed to allege or to provide any evidence that Defendant Webster's alleged actions caused him to suffer an injury that chilled him from continuing to file grievances in the future.  *See Shero*, 510 F.3d at 1203.  Plaintiff also has failed to provide any evidence that the defendants' adverse actions were substantially motivated as a response to Plaintiff's filing of grievances.  *See id.*  Plaintiff's conclusory allegations are insufficient to raise a fact issue.  *See Callahan*, 471 F.3d at 1160.  Defendant Webster is entitled to summary judgment on Plaintiff's retaliation claim.

### c.      Defendant Lefever

Plaintiff alleges Defendant Lefever "used [Plaintiff's] RFP for [his] seeking medical attention as an excuse to confiscate [his] property," and that Defendant Lefever destroyed some important legal papers.  (Compl. at 27, ¶ 21.)  Plaintiff also alleges that Defendant Lefever retaliated against him by not allowing him to log out legal mail.  (*Id.*)  Defendant Lefever does not dispute that on October 29, 2008, when Plaintiff "was to be packed out for transport," Defendant Lefever and Sergeant Oliverus went to Plaintiff's cell to do the pack out.  (Doc. No.

35

150-2, ¶ 6.)  Plaintiff had three books over the eight book limit and a file box not on his property sheet.  (*Id.*)  Plaintiff also had nine new hygiene items, even though Plaintiff had not purchased items from the canteen since April 17, 2007.  (*Id.*)  The books and the hygiene items were given to the shift leader, and a report was written on the unauthorized property.  (*Id.*)  Approximately two cubic feet of loose papers, which were over the limit, were disposed of as nuisance trash. (*Id.*)  Defendant Lefever's states his job duties do not involve whether mail is logged out as legal or non-legal, as that is a function of the mail room.  (*Id.*, ¶ 7.)

It appears Plaintiff is asserting that Defendant Lefever violated his First Amendment right of access to the courts, which is a fundamental constitutional right.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held that, to succeed on a claim of denial of access to the courts by restricting access to legal materials, an inmate must establish "actual injury," i.e., that "his efforts to pursue a legal claim" were "hindered" by the defendant's misconduct.  *Lewis*, 518 U.S. at 351.  Plaintiff has failed to allege any facts or to provide any evidence that Defendant Lefever's actions in removing legal papers and other personal items hindered his efforts to pursue his legal claims.  Plaintiff also has failed to provide any evidence that the defendants' adverse actions were substantially motivated as a response to Plaintiff's filing of grievances.  *See id.*  Thus, Plaintiff's First Amendment claim against Defendant Lefever must fail.

### d.       Defendant Ball

Plaintiff alleges that Defendant Ball terminated Plaintiff from his position in the laundry as a retaliatory act for his complaining that the laundry was not hiring enough people and for

going to the law library for legal access and for his medical issues.  (Compl. at 30, ¶ 30.)

Defendant Ball avers that on October 9, 2009, she noticed Plaintiff was not wearing a white

t-shirt under his green shirt.  (Doc. No. 150-7, ¶ 6.)  Defendant Ball asked Plaintiff where his t-

shirt was, and he replied that he did not wear one in to the laundry and that it was in the unit, and

his work t-shirt was being washed.  (*Id.*)  According to Defendant Ball, Plaintiff violated

"laundry procedure."  (*Id.*, ¶¶ 7–8.)  It is unclear from Defendant Ball's Affidavit whether

Plaintiff was terminated from his laundry job because of the alleged violation of laundry

procedure.  Regardless, Plaintiff has failed to allege any facts or provide any evidence to

demonstrate that Defendant Ball caused or participated in the alleged violation of his First

Amendment rights.  Plaintiff has failed to show that Defendant Ball's alleged conduct has

prevented him from filing additional grievances.  *See Shero*, 510 F.3d at 1203.  Moreover,

Plaintiff has failed to "prove that but for the retaliatory motive, the incident[] to which he refers

. . . would not have taken place."  *Maschner*, 899 F.2d 949–50.  As such, Defendant Ball is

entitled to summary judgment on Plaintiff's retaliation claim.

### e. *Defendant Jimerson*

Though Plaintiff complains that Defendant Ball fired him from his position in laundry,

Plaintiff also complains that "he has been forced to work in this laundry environment," where

Defendant Jimerson was reluctant to release him to go to the library for research of for a new

job.  (Compl. at 31, ¶ 32.)  Plaintiff further alleges that when he complained to Defendant

Jimerson about the laundry job causing him "great harm to [his] health, to [his] back disease, and

being forced when [he had] headaches . . . to work around loud machinery . . . she would get

angry and refuse to call medical." Defendant Jimerson explains that, as Laundry Lieutenant/Supervisor, her specific duties were to supervise offender work crew and three laundry sergeants. (Doc. No. 150-9, ¶¶ 4–5.) Approximately two times per week when Plaintiff had a scheduled appointment, he was allowed to go to the law library in lieu of going to work. (*Id.*, ¶ 6.) Defendant Jimerson states that the laundry staff did not deny Plaintiff access to the law library. (*Id.*) Defendant Jimerson also states that Plaintiff was informed of the working environment in the laundry when he interviewed for the position in December 2008 and that he did not indicate a medical condition at that time. (*Id.*, ¶ 7.) Defendant Jimerson avers that when Plaintiff was ill and could not perform his job duties, he was excused from work. (*Id.*, 8.) Once again, Plaintiff has failed to allege any facts or provide any evidence to demonstrate that Defendant Jimerson caused or participated in the alleged violation of his First Amendment rights. Plaintiff has failed to allege or to produce evidence that Defendant Jimerson's alleged conduct has prevented him from filing additional grievances. *See Shero*, 510 F.3d at 1203. Moreover, Plaintiff has failed to provide evidence that Defendant Jimerson was aware of any grievances filed by Plaintiff or to "prove that but for the retaliatory motive, the incident[] to which he refers . . . would not have taken place." *Maschner*, 899 F.2d 949–50. Defendant Jimerson is entitled to summary judgment on Plaintiff's retaliation claim.

### 3. *Qualified Immunity*

Defendants argue that, to the extent Plaintiff is suing the defendants in their individual capacities under § 1983, the defendants are entitled to qualified immunity on Plaintiff's Eighth

Amendment and First Amendment claims. Whether the defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.* Having concluded above that Defendants are entitled to summary judgment on Plaintiff's First and Eighth Amendment claims, this court also has determined that the defendants did not violated Plaintiff's First and Eighth Amendment rights, and the defendants are entitled to qualified immunity on Plaintiff's § 1983 claims.

### D.    *ADA Claims*

In Claim Three, Plaintiff asserts he has epilepsy, seizure disorder, migraine disease, spinal stenosis, and diffuse disc disease. (Compl. at 32, ¶ 33.) Plaintiff alleges he has been discriminated against by CDOC medical staff and the "named Defendants." (*Id.*, ¶ 34.) Plaintiff also asserts the defendants have failed to recognize his disability, refused to give him a bottom bunk restriction, and refused to provide work restrictions. (*See id.*, ¶¶ 43–76.) Defendants

argue that they are entitled to summary judgment on Plaintiff's ADA claim because Plaintiff does not have a qualifying disability.[3]   (*See* Doc. Nos. 151 at 7; 152 at 8–9; 158 at 7.)

Plaintiff alleges violations of his rights under Title II of the ADA.[4]   Title II provides that "no qualified individual with a disability shall, by reason of such disability, be . . . subjected to discrimination by any such [public] entity."[5]   42 U.S.C. § 12132.   Three methods of proving discrimination are usually available to a plaintiff alleging a violation of Title II of the ADA: "(1) intentional discrimination; (2) discriminatory impact; and (3) a refusal to make a reasonable modification."[6]  *Swenson v. Lincoln County Sch. Dist. No. 2*, 260 F. Supp. 2d 1136, 1144 (D. Wyo. 2003); *see Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007).

---

[3] Defendants filed three separate motions for summary judgment on Plaintiff's ADA claim, each on behalf of different defendants, with each of the three motions making similar arguments.  Defendants also filed a separate motion seeking summary judgment on Plaintiff's claim for punitive damages asserted under the ADA.  This court declines to address each of the these motions because this court finds all of the defendants are entitled to summary judgment for Plaintiff's failure to prove the elements necessary to state an ADA claim.

[4] Title II of the ADA applies to state prisons and prison services.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

[5] 42 U.S.C. § 12132 also prohibits exclusion from participation in or denial of "the benefits of the services, programs, or activities of a public entity" by reason of disability.  However, based on the factual allegations in the Complaint, only the discrimination prong of § 12132 is applicable.

[6] The term "reasonable accommodation" derives from the language of Title I of the ADA, which differs from Title II's use of the term "reasonable modifications," but the Tenth Circuit "has used the terms interchangeably, referring to an individual's request for a 'modification' under Title II as a request for 'accommodation.' "  *Robertson*, 500 F.3d at 1195 n.8.

However, not every claim advanced under the ADA by a prisoner alleging a lack of adequate medical care is cognizable under that provision.  The Tenth Circuit has stated:

> [T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation.  *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)(concluding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" and that the statute "does not create a remedy for medical malpractice"); *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58 (D. Me. 1999)(distinguishing between "claims that the medical treatment received for a disability was inadequate from claims that a prisoner has been denied access to services or programs because he is disabled," and concluding that only the latter class of claims states an ADA violation). *Rashad v. Doughty*, 4 F. Appx. 558, 560 (10th Cir. Jan. 29, 2001).

The court is persuaded that Plaintiff's claims that he was deprived of a bottom bunk restriction and refused work restrictions by the defendants are, in essence, claims of inadequate medical care rather than a claim for a denial of access to services or programs that could establish a violation of the ADA.  Plaintiff has only conclusory alleged a denial of the CDOC's prison programs, and even that allegation is asserted as an Eighth Amendment violation.  (*See* Compl. at 38, ¶ 17 ["Defendant Fortunato violated my 8th Amendment rights . . . . [and] the deliberate refusal of prison officials to accomodate [sic] disability related needs . . . MEDICAL CARE and virtually all other prison programs or activities."].)

To the extent Plaintiff's claims truly are allegations that he has been discriminated against in violation of the ADA, Plaintiff's claim still fails.  Defendants have provided the Affidavit of Defendant Frantz, the Chief Medical Officer for the CDOC.  (*See* Doc. No. 151-1.) Defendant Frantz avers that on May 14, 2007, Plaintiff requested disability accommodations. (*Id.*, ¶ 14.)  The Request for Accommodation reflects that Plaintiff described his disabilities as

41

"drug & alcohol addition, sleep apnea/cavernous hemangioma, degenerative disc disease, Pin [sic] in my left shoulder, traumatic brain injury, hearing in my right ear is failing, seizure disorder, migraine syndrome." (*Id.* at 7.) Plaintiff's disability accommodation screening was performed on June 14, 2007, and June 21, 2007, by Defendant Wermers. (*Id.*, ¶ 15; at 8–15.) The records reflect that, after an extensive evaluation of all of Plaintiff's medical complaints, Defendant Wermers' found "that the [plaintiff] has NO disability(ties)." (*Id.* at 8; *see also* 9–15.) On July 5, 2007, Defendant Frantz reviewed the screening records prepared by Defendant Wermers and verified that Plaintiff had no hearing, mobility, or other disability. (*Id.*, ¶ 16; at 16.) On July 31, 2007, Defendant Frantz signed an Accommodation Resolution issued to Plaintiff wherein he was advised that qualifying disability pursuant to the ADA/Rehabilitation Acts and needed no accommodations. (*Id.*, ¶ 17; at 17.)

On March 6, 2009, Plaintiff was examined again for a mobility disability. (*Id.*, ¶ 18; at 18–28.) Defendant Stock, the evaluating Physician Assistant, found that Plaintiff was not mobility disabled. (*Id.*, ¶ 18; at 28.) Defendant Frantz, after an examination on June 19, 2009, then verified that Plaintiff had no disabilities. (*Id.*, ¶ 19; at 29–32.) On August 24, 2009, Defendant Frantz signed an Accommodation Resolution issued to Plaintiff, wherein he was advised that it had been determined he did not have a qualifying mobility disability pursuant to the ADA. (*Id.*, ¶ 19; at 33.)

On June 8, 2010, Plaintiff requested accommodations and work restrictions for "arachnoid cyst tumors in brain occipital area causing vision problems, PTSD, photophobia, seizure disorder, migrain[e] headaches, [and] chronic lumbar disc disease." (*Id.*, ¶ 21; at 34.)

The disability screening was performed on July 5,2010, and July 15, 2010, by Gatbel Chamjock, PA-C, who found Plaintiff was not disabled.  (*Id.*, ¶ 22; at 45.)  Specifically, Physician Assistant Chamjock found Plaintiff "showed no evident [sic] of permanent disability on physical and ADL observation, though, he has tried to showed [sic] symptoms but they were non consistent."  (*Id.* at 45.)  On July 19, 2010, Defendant Frantz reviewed the screening records prepared by Physician Assistant Chamjock and verified that Plaintiff has no disabilities.  (*Id.*, ¶ 23; at 46–49.)  On July 22, 2010, Defendant Frantz signed an Accommodation Resolution issued to Plaintiff, wherein he was advised that following a disability screening, it was determined he did not have a qualifying vision, mobility, or medical condition (seizures) disability pursuant to the ADA.  (*Id.*, ¶ 24; at 50.)

Defendants have met their initial burden of showing an absence of evidence to support Plaintiff's claim that he has a qualifying disability.  *See Celotex Corp.*, 477 U.S. at 325. However, Plaintiff has failed to meet his burden of providing evidence in this regard to demonstrate a genuine issue for trial on this matter.  *See Concrete Works, Inc.*, 36 F.3d at 1518. Thus, because the undisputed evidence shows that Plaintiff does not have a qualifying disability under the ADA, his ADA claims must fail.

Nevertheless, even if Plaintiff had met his burden of showing he had a qualified disability, his ADA claim still fails because Plaintiff has failed to provide any evidence, other than his conclusory allegations, that he has been discriminated against because of his alleged disability.  As such, Defendants are entitled to summary judgment on Plaintiff's ADA claim and on Plaintiff's claim for punitive damages associated with his ADA claim.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that

1.      "Defendants Dr. Barry Goldsmith, Stephen Krebs, M.D., P.A Brian Webster, P.A.

Tejinder Singh, Joseph Gary Fortunato, D.O., P.A. Jo Ann Stock, Nurse Nancy White, and CO

Regina Johnson's Motion for Summary Judgment with Respect to Plaintiff's Claim for

Deprivation of Eighth Amendment Right to be Free from Cruel and Unusual Punishment" (Doc.

No. 149) be GRANTED;

2.      "Defendants Captain Winger, Major Johnson, Lt. Mark Bold, Lt. Shane

McMahill, Lt. Jason Zwirn, CO St. Martin, P.A. Brian Webster, CO Kenneth Lefever, Sgt.

Becky Ball, and Lt. Jimerson's Motion for Summary Judgment with Respect to Plaintiff's Claim

for Retaliation and Exercise of First Amendment Protected Rights" (Doc. No. 150) be

GRANTED;

3.      "Defendant State of Colorado - Office of the Governor Bill Ritter's Motion for

Summary Judgment Against Plaintiff's Remaining Claim Against Defendant Governor Ritter -

Official Capacity for Deprivation of Rights Secured by the Americans with Disabilities Act"

(Doc. No. 151) be GRANTED;

4.      "Defendants Dr. Barry Goldsmith, Paula Frantz, M.D., C.M.O., Stephen Krebs,

M.D., Joseph Gary Fortunato, D.O., P.A. Brian Webster, P.A. Tejender Singh, P.A. JoAnn

Stock, and Joseph J. Wermers' Motion for Summary Judgment Against Plaintiff's Claim for

Deprivation of Rights Secured by the Americans with Disabilities Act" (Doc. No. 152) be

GRANTED;

44

5.      Defendants' Motion for Summary Judgment with Respect to Plaintiff's Claim for Punitive Damages for Deprivation of Rights Secured by the Americans with Disabilities Act (Doc. No. 155) be GRANTED;

6.      Defendants Aristedes Zavaras, Cathie Holst, Adrienne Jacobson, and Ms. Heverly's Motion for Summary Judgment with Respect to Plaintiff's Claim for Deprivation of Rights Secured by the Americans with Disabilities Act (Doc. No. 158) be GRANTED; and

7.      Plaintiff's Complaint and this case be dismissed in its entirety.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

45

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 22nd day of April, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge